83 So.2d 224

**STREMMING VENEER CO.**

**v.**

**JACKSONVILLE BLOW PIPE CO.**

**5 Div. 627.**

Supreme Court of Alabama.

Nov. 3, 1955.

492

Grady Reynolds and Reynolds & Reynolds, Clanton, for appellant.

493

Jos. J. Mullins, Clanton, for appellee.

PER CURIAM.

This is an appeal by defendant from a judgment in favor of plaintiff for goods and chattels sold and for work and labor done. The complaint is on the common counts. The defense was the general issue and the customary leave.

Prior to June 30, 1950, and in 1946 and 1947, plaintiff did much work for defendant in a plywood plant at Maplesville, Alabama. Defendant had two plants at Maplesville, plant No. 1 being across the railroad from plant No. 2. The work done by plaintiff included installing and servicing blowpipes and equipment to take sawdust and shavings to the furnaces. For that work defendant had paid plaintiff a large sum aggregating approximately $20,000 to $30,000. Plaintiff was then an unincorporated enterprise located in Jacksonville, Florida. Plaintiff became incorporated on March 15, 1948 in Florida, and began operations as a corporation on January 1, 1949. After this incorporation, and in 1949, plaintiff furnished labor and material for a dust collector for defendant's plant No. 1, and repaired some equipment there. On December 3, 1949 plaintiff sent defendant a bill for that service amounting to $3,365.08, less payments of $646 made to workmen on the job, which left a balance of $2,719.08. Defendant refused to pay it on account of defects claimed in the material and labor which had been supplied at plant No. 2.

The evidence shows that plaintiff had not qualified to do business in Alabama as a foreign corporation, and therefore could not recover the balance claimed for said work and material furnished for the dust collector at plant No. 1 in 1949. On June 30, 1950 the plaintiff qualified to do business in Alabama, and on that day Mr. Montgomery, president and general manager for plaintiff, went to Maplesville, where defendant's plants were situated, and saw Mr. Stremming, president and general manager of defendant, and they had some sort of verbal agreement. Mr. Stremming testified that he told Mr. Montgomery they (his corporation) would not pay him for the dust collector at plant No. 1, the amount of which was $2,719.08, unless he made the system work properly in plant No. 2. Mr. Montgomery testified that on June 30, 1950 at Maplesville, he agreed with Mr. Stremming after he examined the deficiency

494

caused by the overload in plant No. 2, that he would correct and guarantee it if defendant would agree to pay the $2,719.08. To this defendant agreed.

Plaintiff claims to have written a letter on July 3, 1950 to defendant confirming the verbal agreement of June 30th. This letter named certain items of work and material necessary to correct the troubles in the blowpipe system at plant No. 2 and from Graham's plant to plant No. 1, and recited that in consideration of the above defendant was to pay plaintiff $2,719.08 when the plants were performing properly. It is noted that this is the exact amount of the balance of the invoice for the dust collector at plant No. 1 claimed by plaintiff, which it could not collect by law because plaintiff in performing that service was a foreign corporation and not qualified to do business in Alabama.

A carbon copy of the above letter was introduced in evidence. No notice to produce the original had been given before the trial began. What amounts to a demand was then made, but defendant did not have the original letter in court. Plaintiff testified that the original was properly addressed, stamped and mailed to defendant. The court overruled the objection and defendant excepted. Plaintiff also introduced a letter from defendant to plaintiff of July 12, 1950 referring to its letter of July 3, 1950, stating "your letter seems to conform very much with our conversation with the exceptions of you not having in there about repipping two belt sanders setting next to the corner of the roll feed sanders".

■ It is clear that error occurred in overruling the objection to the introduction in evidence of this carbon copy. The notice to produce on the trial or before the trial must be such as will enable a compliance. Clark v. Henderson, 244 Ala. 237 (17), 12 So.2d 743; Sovereign Camp W.O.W. v. Ward, 196 Ala. 327(4), 71 So. 404; Thomas Bros: v. Williams, 170 Ala: 522, 54 So. 494. That principle is of course admitted, but it is insisted that the ruling was without injury to defendant since the letter by defendant of July 12th was an admission that such letter contained a true statement of the contract. Phillip Olim & Co. v. C. A. Watson & Sons, 204 Ala. 179, 85 So. 640. But defendant's letter of July 12th was in answer to plaintiff's letter of July 3d, not an answer to what purports to be a copy of that letter. Defendant was entitled to have evidence introduced according to the rules. But a violation must appear to be prejudicial. Supreme Court Rules, rule 45, Code 1940 Tit. 7 Appendix. Defendant did not deny having the original letter of July 3d though it was not in court. If the instrument offered was not a true copy of the letter of July 3d defendant could have quickly so discovered during the progress of the trial and called attention to it since the original was in his office some fifteen miles from the place of trial. We do not see where the substantial rights of defendant were violated by this error.

■ A similar legal status applies to a letter of July 19th by plaintiff to defendant. A carbon copy of it was offered and allowed over objection because it was secondary and no notice to produce the original had been given. We fail to see any prejudice in this ruling, though erroneous, considering the nature of the letter.

■ The contract should be treated as represented by the letter of July 3d, the answer to it of July 12th and the letter of July 19th. True, the letter of July 12th added a feature which was not expressly accepted by plaintiff, but was impliedly accepted in the letter of July 19th. The question was, as the court charged the jury, whether defendant owed plaintiff anything for labor and material under the contract of June 30, 1950, which were supplied subsequent to that date. Defendant contended that plaintiff did not perform the contract as represented by the confirmatory letters. Plaintiff claimed to the contrary. The verdict awarded plaintiff one-half of the claim.

■ Plaintiff introduced a document which was a carbon copy of an original memorandum made in quadruplicate by plaintiff. No one of them was sent to defendant and it had not notice of or connection with such memorandum. Plaintiff

495

claimed the right to use it as evidence under section 415, Title 7, Code, as a memorandum "made in the regular course of any business, and [that] it was [in] the regular course of the business to make such memorandum". Plaintiff made proof in accordance with that statute. But it is not every memorandum made in the regular course of business, according to a custom in that business, that is admissible under the statute. Section 415, supra, does not operate to admit evidence which is inherently inadmissible. "Opinions circumventing the opinion rule are no more admissible in a memorandum in evidence than they would be in oral testimony." Mahone v. Birmingham Electric Co., 261 Ala. 132(3), 73 So.2d 378, 381; Deal v. Hubert, 209 Ala. 18, 95 So. 349. A party to a suit cannot make an office memorandum containing conclusions, opinions, hearsay and irrelevant statements, which are illegal evidence, and cause it thereby to be admissible against an opponent when it may have a prejudicial effect on him. Deal v. Hubert, supra.

In the instant case this memorandum was described by plaintiff's witness as a shop order, "instructions to the shop about jobs they are to do as well as instructions to the installation mechanic as to work he is to do when he gets on the job and receives the materials that are shipped to him and which are itemized on this shop order", and that it is made in four copies. "The original is kept in the shop order book and the first carbon copy is sent to the shop because they sometimes get them messed up in the shop and so this is the shop order that was sent to the shop and the writing on here is the writing of the superintendent of the shop where it says here, 'Taken by our truck, July 6th, 1950,' and the check marks there indicate that the material has been shipped." The memorandum consists first of instructions to the installation mechanic, containing the expression of an opinion about the cause of the trouble; his interpretation of the agreement; what Mr. Graham said about some features of it; what is necessary to be done, with an item-

ized statement of the material needed. Much of this would be inherently incompetent as evidence given by a witness having knowledge and expressing the views there set out. It cannot be made competent by putting it in a memorandum and claiming legality under section 415, supra. The judgment should be reversed for that error.

It is also insisted that the motion for a new trial should have been granted because the verdict split the claim in half, without evidence to support it, and is said evidently to be a compromise. There was no proof offered on that contention, if any were admissible.

In order for a verdict to be set aside because it is a compromise, it should appear that some of the jurors "surrendered their conscientious convictions as to some material issues or right of recovery in return for certain concessions by the other jurors on another issue". 89 C.J.S. Trial, § 472, p. 112. And "where the verdict which the jury returns cannot be justified upon any reasonable hypothesis presented by the evidence, it ought obviously to be set aside. Neither the court nor jury have the right to arbitrate or compromise differences between the parties". Holcombe & Bowden v. Reynolds, 200 Ala. 190, 75 So. 938; Metropolitan Life Ins. Co. v. Ray, 28 Ala.App. 357, 184 So. 282.

We are unable to say that the jury did not give due consideration to the amount of the controversy, and did not fix the damages upon a consideration of the merits of the respective contentions.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MAYFIELD, JJ., concur.